Veve et al. *v.* The Fajardo Sugar Growers' Association.

Appeal from the District Court of Humacao.

No. 720.—Decided April 22, 1912.

Unlawful Detainer—Maturity of Obligation—Offer of Payment Made Before Maturity—Consignation.—When a lease stipulates that the payment of rentals shall be by semesters in advance the tender of payment of a semester is legal when made four days before the said payment is due because such payment in advance is beneficial to the creditor and no allegation has been made by him that he would be prejudiced thereby.

ID.—TENDER OF PAYMENT TO WIFE—SPECIAL PROPERTY OF WIFE.—The court held that the tender of payment to the respective wives of the plaintiffs was made to the proper persons for the reason that they were the lessors in the contract of lease of the estate in litigation of which they were the joint owners and because in said contract it was stipulated that the payment should be made to the joint owners, the husband of one of the plaintiffs having intervened in the contract of lease as attorney in fact of his wife; besides the collection of the rents of a lease is an administrative act and according to section 160 of the Civil Code each of the spouses is the owner and administrator of his own property.

ID.—TENDER OF PAYMENT—CERTIFICATES OF DEPOSIT—ESTOPPEL—ACCEPTANCE.— It was decided on appeal that the offer of payment of the rental in certificates of deposit was not a violation of section 1138 of the Civil Code because the plaintiffs, who were not bound to accept the payment of the rental for the semester in certificates of deposit, did not reject said certificates absolutely but returned them because they had observed some notable error in them which needed to be corrected whereby they evinced an intention of accepting them provided the corrections were made.

ID.—CONSIGNATION—CERTIFICATES OF DEPOSIT—SUBSTITUTION BY MONEY.—A consignation is not without effect because the certificates of deposit were withdrawn after their admission by the court in order to substitute money for the amount they represented, for said substitution could not cause the obligation to pay the rent to continue in force.

ID.—CONSIGNATION—TENDER OF PAYMENT—NOTICE.—The law regulating the tender of payment and consignation of the amount due does not require that the acts of tender of payment, notice, and consignation must be performed necessarily on the same day, for when the consignation is made in legal form after the tender of payment was duly made the consignation dates back to the time of said tender of payment provided said consignation was made within a reasonable length of time.

TENDER OF PAYMENT—HOLIDAY.—Inasmuch as the first day of January, 1911, was a Sunday and the second day a legal holiday the first day on which the payment could be made was the third day of January, and therefore the tender of payment made on that date in satisfaction of an obligation due on the first of January had the same effect as if it had been made on the first day of January.

ID.—CONSTRUCTION OF RAILWAY BRANCH ROADS—GROUNDS FOR ACTION OF UNLAWFUL DETAINER—USE OF PROPERTY.—The fact of constructing railway branch roads upon a leased property without the consent of the lessor is not in itself sufficient cause for an action of unlawful detainer when it has not been proven that the construction of such branches caused depreciation in the value of the property or changed the conditions thereof when the lessee has continued to observe due care in the management of the property, without prejudice to the rights which the lessor may have against the lessee under the provisions of article 1459 of the Revised Civil Code.

FELLING OF TREES AND BUILDING TIMBER—LIABILITY OF SUCCESSOR IN INTEREST—LEGAL RELATIONS BETWEEN LESSOR AND SUCCESSORS IN INTEREST OF THE LESSEE.—When the legal relations existing between the lessor and the successors in interest of the lessee, against whom the action of unlawful detainer is brought, are of such a nature or so special or complex as to pre-

clude all reasonable possibility of estimating with certainty the result and consequence thereof the summary proceeding of the action of unlawful detainer is not the proper method of determining the responsibility of the successors in interest of the lessee towards the lessor for the acts performed by their predecessors in interest, but in such a case resort should be had to the ordinary action at law.

The facts are stated in the opinion.

*Messrs. José A. Poventud, Arturo Aponte Jr., and Horacio S. Belaval* for appellants.

*Mr. Luis Muñoz Morales* for respondents.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On February 9, 1911, Concepción and Josefina Veve, with their respective husbands, José S. Belaval and Prisco Vizcarrondo, filed an amended complaint in the District Court of the Judicial District of Humacao against The Fajardo Sugar Growers' Association, praying that judgment be rendered sustaining their action of unlawful detainer and ordering the ejectment of the defendant, its representatives and employes, from the estate "Aurora," whereof the plaintiffs were owners, with costs and counsel fees against the defendant corporation.

Said complaint was contested by the defendant, and trial having been had, judgment was rendered on April 12, 1911, dismissing the complaint with costs against the plaintiffs, who took an appeal to this Supreme Court.

Counsel for appellants in his brief confines to three the facts alleged in the latter's complaint. These facts are the following:

1. Default in payment of the rent according to the terms agreed upon in the deed of March 31, 1906.

2. The defendant corporation's permitting the Fajardo Development Company to establish a right of way by running a railway track through estate "Aurora" and connecting in two places the tracks of said corporation with that of The Esperanza Central Sugar Company without the consent

of the owners of the estate "Aurora," thereby causing the depreciation of said property to the detriment of its owners.

3. The lessees and occupants of estate "Aurora" have made use thereof without the diligence of a father of a family, by felling, cutting down, and destroying the greater part of the woods and failing to replant any portion of them, through which acts, not stipulated, they have caused the depreciation of said estate.

From these facts the appellants derive the grounds for dispossession contained in paragraphs 2, 3, and 4 of section 1472 of the Civil Code, namely:

2. Default in payment of the price agreed upon.

3. Violation of any of the conditions stipulated in the contract.

4. Employing the thing leased in uses or services not stipulated and which cause the same to be impaired, or not complying, in regard to its use, with the provisions of paragraph 2 of section 1458.

Paragraph 2 of this section provides that the lessee shall use the thing leased as would a diligent father of a family, applying the same to the use agreed upon and, in the absence of an agreement, to the use which may be inferred from the nature of the thing leased, according to the custom of the land.

With reference to the first ground for dispossession, the following facts appear to have been borne out at the trial:

(a) By public deed of March 31, 1906, José S. Belaval, as attorney in fact of his wife, Concepción Veve, and Josefina Veve de Vizcarrondo executed in favor of The Esperanza Central Sugar Company a contract of lease of estate "Aurora," whereof the former are owners, for a period of 11 years and rent of $2,400 for the first year and $4,800 for each of the succeeding years, which sums were to be paid by the lessee to the joint owners, one-half to each every semester in advance, on July 1 and January 1 of each year. It was expressly agreed that if the lessee or its successor in interest should

fail to pay any of the semesters punctually both lessors would have the right, each for herself, to rescind the contract and prosecute an action for the immediate evacuation of the estate, or to continue the contract, should they deem it advisable, and demand payment of the arrears through the proper action.

(b) All the assets and rights of The Esperanza Central Sugar Company were sold at public auction by the marshal of the District Court of the United States for Porto Rico, the proper deed of sale having been executed on July 12, 1909, in favor of The Colonial Sugar Company, to which corporation was awarded the contract of lease of estate "Aurora."

(c) By another deed, executed in New York on November 17, 1909, The Colonial Sugar Company transferred and conveyed to The Fajardo Sugar Growers' Association several contracts of lease, among them that of estate "Aurora," under the stipulations which regulated the same.

(d) The rent for the semester of January to July, 1910, that should have been paid in advance on January 1 of that year, was paid with checks drawn December 29, 1909, by Jorge Bird León in favor of the lessors, Concepción and Josefina Veve, against the Banco Territorial y Agrícola, one of the checks having been indorsed to the American Colonial Bank and the other to Bird & Barceló.

(e) For payment of the rent from July to December, 1910, which should have been satisfied on July 1 of that year, the defendant sent, through its attorneys, to each of the plaintiffs a certificate of deposit in the American Colonial Bank for the sum of $1,200 made on the 27th of the preceding June, the certificate of deposit sent to Concepción having been returned by her because of an important error she had observed therein, in order that the sender might correct the same, should it deem it advisable, as stated by said lessor in a letter dated June 30 of that year. In another letter of July 6 following said Concepción insisted upon the return

of the certificate because of the subsistence of the same error to which reference has been made. Josefina Veve also returned, on June 30, 1910, the certificate of deposit made in her favor.

(*f*) By notarial deeds of July 11 and 12, 1910, Josefina and Concepción Veve were required to accept both of aforesaid certificates of deposit in payment of the rent for the semester from July to December, 1910, as otherwise the consignation would be made in due legal form, both lessors refusing to receive in payment such certificates of deposit.

(*g*) Thereupon The Fajardo Sugar Growers' Association applied to the District Court of Humacao praying that the consignation of the $2,400 be declared to have been made through the two certificates of deposit referred to, and said court, by an order of July 19, 1910, directed that these certificates be kept in the custody of the secretary of the court as representing the sums that should be paid Josefina and Concepción Veve to cover the semester of rent of estate "Aurora" from July to December, 1910.

(*h*) Notice of aforesaid order was first served on Josefina Veve, and then, on December 13 of said year, on Concepción Veve and her husband, José S. Belaval, who the next day filed a writing in opposition to the consignation made, the decision rendered by the court thereon not appearing in the record; but it appears therein that on December 28 of aforesaid year the attorneys for The Fajardo Sugar Growers' Association asked the court to consider the certificates of deposit as having been withdrawn, the sums they represented being substituted by United States bills, to which the court assented, and on December 31 ordered the substitution prayed for to be made; whereupon the spouses, Veve-Belaval, filed a motion for the annulment of said order, which motion was argued by the parties, but the decision rendered thereon does not appear on the record.

(*i*) As to the semester of the lease from January to June, 1911, it appears that under date of December 31, 1910, Mr.

and Mrs. Belaval and Josefina Veve were requested to accept payment, said request, with respect to the aforesaid married couple, being repeated on January 3 following; and as neither of them consented to accept, the Humacao court, by order of January 7 following, directed that the sum of $2,400 in United States bills, consigned by The Fajardo Sugar Growers' Association for account of the lessors and in the proportion of one-half to each to cover the aforesaid semester, be deposited with the secretary, said sum remaining at the disposal of the lessors.

From the facts above set forth it appears that the defendant, as successor in interest of The Esperanza Central Sugar Company from November 17, 1909, should have paid in advance up to the date of the filing of the complaint the rent corresponding to three semesters—one from January to June, 1910, another from July to December of the same year, and the last from January to June, 1911.

In regard to the rent for the semester from January to June, 1910, the same was in due time satisfied by means of checks which were accepted and collected by the lessors without any objection whatsoever; and in their brief they do not contest the validity of this payment, nor could they legally contest it, for the reason that no one can go against his own acts. The opposition is confined to the payment of the rents for the semesters from June to December, 1910, and from January to June, 1911.

As to the payment of the semester from July to December, 1910, the appellants allege that the tender of payment made to Josefina Veve by means of certificates of deposit issued in her favor on June 27 of the same year was ineffective in law: (1) Because that tender was made three days before the period for said payment, which had been fixed for July 1, 1910, and was subsequently repeated five days after the expiration of said period; (2) because the tender was made to Concepción and Josefina Veve and not to their respective husbands, José S. Belaval and Prisco Vizcarrondo;

(3) because the tender of payment was made in a commercial document and not in specie, as stipulated.

Let us examine these reasons in the light of the provisions of law applicable to the case.

Section 1092 of the Civil Code prescribes that obligations, the fulfilment of which has been fixed for a day certain, shall only be demandable when the proper day arrives; and under this legal provision there is no doubt that the plaintiffs could not demand from the defendant the payment of the rent for the semester from July to December, 1910, before July 1 of that year. But could the defendant make that payment, as it had attempted to do, on the 27th of the preceding June—that is, four days before the maturity of the obligation to pay? We do not hesitate to answer this question in the affirmative, having in mind section 1094 of the aforesaid code, according to which whenever a period should be fixed in obligations it is presumed as established for the benefit of the creditor as well as of the debtor, unless from their tenor or from other circumstances it should appear that it was established for the benefit of one or the other.

Upon an examination of the contract of lease of March 31, 1906, on which rests the right of the defendant to possess the estate "Aurora" belonging to the plaintiffs, we find that the condition to receive in advance the rent for the semesters was established for the benefit of the latter and the obligation to make the payment in that manner, to the prejudice of the lessee. Hence, by paying before the day fixed therefor the benefit of the lessors was enhanced, and they have not alleged nor proven that the advance payment had caused them any injury. The tender of payment having, then, been made on June 27, 1910, before July 1, when the obligation fell due, and such payment redounding to the benefit of the creditor and prejudice of the debtor, it is evident that said advance payment carried with it the fulfilment of the obligation upon maturity. That such was the case is shown by the fact that the plaintiffs accepted the payment of the rent for

the semester from January to June, 1910, although the checks for the payment had been drawn December 29, 1909, or three days before the obligation fell due.

It happens, moreover, with respect to the rent for the months of July to December, 1910, that the payment was made in certificates of deposit issued June 27 of the same year, to the admission whereof as such, or because premature, the plaintiffs had offered no objection, but were disposed to accept them as soon as the error noticed by them, which, however, was not stated, had been corrected. Had it not answered their purpose to receive the money deposited until July 1, they could have left it on deposit to be received on the aforesaid date.

From the foregoing statement it is seen that the tender of payment made on June 27, 1910, was effective in law by reason of the time in which it was made, bearing in mind all the circumstances of the case, although the money was tendered before maturity of the obligation.

Again, the offer of payment was made to the proper person in compliance with the provision of section 1130 of the Civil Code. It was not necessary to make said tender to the respective husbands of Concepción and Josefina Veve: (1) Because the latter were the grantors of the contract of lease of estate ''Aurora''—of which they were the owners—in favor of The Esperanza Central Sugar Company, whose successor in interest is at present the defendant corporation, said owners, consequently, being the persons who *prima facie* were entitled to the payment; (2) because in said contract it was stipulated that the payment should be made by the lessee to the joint owners, both lessors reserving the right to rescind the contract in case of default, to institute dispossession proceedings should they deem it advisable, and to demand payment of arrears through the proper action; (3) because José S. Belaval and Prisco Vizcarrondo have not contested the validity of said stipulation at the present trial, nor does it appear that they did so outside thereof, while it is worthy of note

that Belaval, as attorney in fact for his wife, had intervened
in the contract of lease; (4) because Concepción and Jose-
fina Veve accepted the payment of the rent for the semester
of January to June, 1910, without making the slightest indi-
cation as to their husbands being the persons entitled to re-
ceive said rent, nor have the latter claimed such right; then,
if the defendant committed the error with which it is charged,
it was due to the conduct of the lessors and their husbands;
and (5) because section 160 of the Civil. Code provides that
each one of the parties to a marriage is the owner and admin-
istrator of his own property; and. as the estate "Aurora" is
the property of the plaintiffs, on the strength of which title
they had in their own right leased said estate to The Espe-
ranza Central Sugar Company, and the collection of the rents
on said lease is an administrative act, it is evident that the
tender of payment of the rent in question was properly made
to the plaintiffs by the defendant. And be it noted that we
do not discuss the legality of the payment, had it been made
to the husbands of the lessors, bearing in mind that accord-
ing to section 1327 of the Civil Code the husband is the admin-
istrator of the conjugal partnership and that according to
section 159 the husband shall be the administrator of the
conjugal property except when otherwise stipulated, and that
according to paragraph 3, section 1316, the fruits, income, or
interest collected or accrued during the marriage coming from
the partnership property, or from that which belongs to
either one of the spouses, belong to the conjugal partnership.
What we do maintain in the present case is that according
to the facts and the law the tender of payment was made to
the proper person.

Nor was the payment in certificates of deposit a violation
of section 1138 of the Civil Code, which reads:

"Section 1138. Payments of debts of money shall be made in the
specie stipulated, and should it not be possible to deliver the specie,
in legal silver or gold coin current in Porto Rico.

"The delivery of promissory notes to order or drafts or other com-

mercial paper shall only produce the effects of payment when collected or when, by the fault of the creditor, their value has been affected.

"In the meantime the action arising from the original obligation shall be suspended."

In accordance with the provisions of law above transcribed the plaintiffs were not bound to accept the payment of the rent for the semester from July to December, 1910, and to receive the certificates of deposit sent by the defendant; but as they did not reject said certificates in an absolute manner, but returned them because they had observed some important error in them which had to be corrected, it is clear that they evinced an intention of accepting said certificates provided the correction were made.

This important error, which the plaintiffs did not specify, nor were they called upon to do so when returning the certificates of deposit, remained subject to such estimate of the reason for the refusal of the creditors as in due time might be made by the judicial authority, when the consignation of the thing due should be contested as ineffective in law because not in strict conformity with the provisions regulating the payment. Said error, as explained by the appellants in their brief before this Supreme Court, consisted in the fact that the certificates had been drawn in the name of the plaintiffs instead of in the name of their husbands, and we have already shown that the tender of payment had been made to the proper person. Nor can it be alleged that the consignation remained without effect because the certificates of deposit had been withdrawn after their admission by the judicial authority of Humacao, for they were substituted by other securities having the same value, and in view of such substitution the obligation of the defendant could not continue in force.

The appellants maintain that the operations of tender of payment, notification, and consignation, must be effected on the same day on which the payment should have been made, though it be in successive moments of said day, while from the trial it appears that aforesaid acts took place on different

days, the consignation having been made 19 days after maturity of the obligation or after the day fixed for the payment.

Among the legal provisions which regulate the tender of payment and consignation included in sections 1144 to 1149 of the Civil Code we do not find a single one which establishes the doctrine maintained by the appellants, and although section 1145 provides that the consignation should have no effect when not strictly in accordance with the provisions governing payment, said provisions, which are those contained in sections 1125 to 1139 of the Civil Code, have been fulfilled in the part thereof supposed to have been violated. The consignation effected in legal form, when the tender of payment was made in due time, shall be carried back to the date of said tender of payment provided the consignation has been made within a prudential period of time.

As regards the semester from January to June, 1911, which should have been paid on the 1st day of said January, it appears that the tender of payment was effected on December 31, 1910, and January 3, 1911, the consignation being made on the 7th of the latter month; and even admitting for argument's sake that the first tender was illegal, although it favored the creditor, the fact is that inasmuch as the first day of January, 1911, was Sunday and the second day a legal holiday, the first day on which the payment could be made was the 3d of January, when the second tender was made, said tender having therefore the same effect as if it had been made upon the day appointed, according to section 389 of the Political Code.

Thus, there has been no default in the payment of the rentals of estate "Aurora" which could afford occasion for the dispossession applied for.

Let us now see what the record says with reference to the other facts set forth by the appellants in their brief as grounds for an action of unlawful detainer.

1. In clause 5 of the contract of lease of estate "Aurora"

to The Esperanza Central Sugar Company entered into on March 31, 1906, it was stipulated that the lessee was allowed (*a*) the use of the woods, (*b*) the right to enjoy the crops or cane plantations or any other that might be desired, and (*c*) a right of way for a track 10 meters wide across the estate for the purpose of operating a railway, which right of way, as stipulated in clause 10 of said contract, would remain in force at the termination thereof.

2. By public deed of compromise executed on January 6, 1910, between José S. Belaval and Miguel Zalduondo Veve, as attorneys in fact for Concepción and Josefina Veve, parties of the first part, and Jorge Bird, as general manager of The Fajardo Development Company, with intervention of the defendant, The Fajardo Sugar Growers' Association, party of the second part, it was stipulated that The Fajardo Development Company could connect its track with that of The Esperanza Central Sugar Company across the estate of Concepción and Josefina Veve, to be used during the crop of 1910, the owners of the lands not demanding an indemnity therefor, the enjoyment of said right, however, not to exceed the time allowed said company by the Executive Council to finish the construction of the general line in accordance with its franchise and for the purpose of laying the track of The Esperanza Central Sugar Company.

3. At the trial a plan of the tracks of estate "Aurora" was produced as evidence, which both parties accepted, and admitted that the track built by Central Esperanza, represented under letter A, was authorized by the contract of lease of the estate "Aurora," said track being utilized by The Fajardo Development Company; that the general track, marked letters CC, belongs to The Fajardo Development Company and is being built on parcels of land that said company had acquired from the plaintiffs; that another track— letter B—had been built by Central Esperanza since 1906, when it occupied the estate as lessee; that track letter D is the old connection built by The Fajardo Development Com-

pany on the strength of the authorization conferred upon it
by the aforesaid deed of January 6, 1910; and that tracks
letters E and F are the present connections of the general
track of The Fajardo Development Company built in December, 1910, for the purpose of connecting its aforesaid general
track with the old track of Central Esperanza, marked letter D, which connections have substituted the old one (letter
D), they also being used by The Fajardo Development Company.

4. Although the oral evidence produced at the trial is
contradictory not only as to the greater or less number of
*cuerdas* of wood on estate "Aurora" when it was leased to
The Esperanza Sugar Company, but also as to the value of
its timber, the fact is—for it was proven at the trial—that
the felling of trees was done by The Esperanza Sugar Company and not by the defendant corporation.

In view of the facts above set forth with respect to the
branches of railway built on estate "Aurora" and relative
to the felling of trees of the woods belonging to said estate,
we are of the opinion that the judgment appealed from should
be sustained, disregarding not only the first ground of the
appeal but also the other grounds we are now examining.

With respect to the construction of the railway branches,
we consider applicable thereto the reasons upon which is based
the judgment rendered by us on June 1, 1906, *Rodríguez* v.
*Jiménez,* 11 P. R. R., 7, in a case analogous to the one at
bar, wherein the fact that the lessee had, without the knowledge of the plaintiff lessor, established on part of the leased
estate a railway track for transportation of canes of The
Juncos Central Company, was alleged as sufficient ground for
an action of unlawful detainer.

We then laid down the following doctrine:

"And the learned commentator, José María Manresa y Navarro,
in volume 10, page 583, says in commenting on article 1569 of the
former Civil Code, which is the exact equivalent of section 1472 of
the Revised Code:

" 'It cannot be denied that the moment this occurs the lessee violates one of the conditions of the contract, and in this sense it appears to be comprised in the third cause of dispossession enumerated in article 1569. But if we carefully examine the connection between all the subdivisions of this article, and what they wish to express in relation to each other, it will not be difficult to arrive at the conclusion which logic imposes, that if subdivision 4 treats specifically and particularly of the use and destination of the estate leased as a cause of dispossession, there must not be considered as included in subdivision 3 of article 1569, notwithstanding its generality, the conditions which refer to said use and destination, because this would imply a duplication of causes for dispossession, which cannot be justified on any ground.

" 'The acts which may constitute grounds for dispossession by reason of the manner in which the estate may be used are enumerated in subdivision 4 of article 1569, and to it exclusively must recourse be had to determine whether or not such grounds exist. Now, then, the terms thereof require that in order that a cause for dispossession may exist the diligence of a father of a family must be lacking, as required by subdivision 2 of article 1555 (subdivision 2 of section 1458 of the Revised Code), or that the use not agreed upon which the lessee may make of the thing should amount to an impairment thereof. If the lessee merely uses the thing for a different purpose from that stipulated, but in doing so observes due diligence and does not cause the thing to depreciate in any way, the cause for dispossession established by subdivision 4 of article 1569 is not present, strictly speaking.

" 'There will always be a presumption of noncompliance on the part of the lessee with the obligation imposed upon him by subdivision 2 of article 1555, a presumption which will be subject to the sanction of article 1556 (section 1458 of the Revised Code); but the judicial method of enforcing that sanction in the interest of the lessor will not be, in our judgment, an action of unlawful detainer because a legal ground for the prosecution of such action would be lacking. This condition is just one because if the lack of diligence and the impairment of the thing demand a remedy such as an action of unlawful detainer, when these circumstances are not present, but simply a mere change of use for which the lessee might possibly be justified, it is logical to grant a wider scope of means of defense and a proceeding where the questions raised may be most carefully elucidated.'

"We are certainly authorized to base our opinion herein on the high authority cited, because our present Civil Code has not been

changed on this point, and because the reasoning hereinbefore set forth is sound and convincing.

"In this specific case the lessee has not violated any of the conditions stipulated in the contract. He could devote the estates to plantings of any kind and to the care of cattle, and if he devoted them partly to a different use, laying the road, but in doing so observed due diligence, in the absence of any allegation that he has impaired them or that such use is contrary to the custom of the land, there is absolutely no cause for dispossession, although there may be the sanction of section 1459 of the Revised Civil Code, because there will always exist, as Manresa says, a presumption of noncompliance on the part of the lessee with the obligation imposed upon him by subdivision 2 of section 1458."

The doctrine set forth is perfectly applicable to the case at bar, in which, although the depreciation of estate "Aurora" has been alleged, it has not been proven that the construction of the railway branches not authorized by the owners has diminished the value of the property, nor that it was contrary to the nature thereof or to the customs of the land.

But shall the action of unlawful detainer lie because of the felling of trees and building timber carried out by The Esperanza Sugar Company and not by the defendant corporation, its successor in interest; or, in other words, shall said corporation be responsible for acts executed by its predecessor in interest for purposes of the action of unlawful detainer?

The Supreme Court of Spain, in a judgment of December 2, 1904, laid down the doctrine that where an action of unlawful detainer is instituted as a means of reinstating the owner of an estate in the full exercise of his rights of ownership, when the lessee openly and knowingly fails to comply with the obligations of the contract, or when the term of the lease has expired, it is necessary for the success of the action, according to the constant jurisprudence of the aforesaid court, that the relations existing between the lessor and lessee be of such a nature that the violation of the obligations stipulated, either with respect to the payment of the rent or compensation agreed upon, or regarding any other obligation as to the

mode of conducting the leased estate, should be clearly established at the trial; for when the respective obligations are of such a nature or so special or complex as to preclude all reasonable possibility of estimating with certainty the purpose and importance thereof, the summary proceeding of the action of unlawful detainer would be converted into a means of obtaining, with certain violence, the rescission of a contract without the safeguards of defense and pleading afforded by ordinary actions.

In another judgment of May 29, 1906, the same court held that the action of unlawful detainer lay only when between the lessee and lessor, or the owner of the estate and the person who occupies it at sufferance, there exist no legal relations other than such as are derived from said character, and when with respect to them no reasonable doubts are raised requiring an examination and discussion possible only in the prosecution of the proper declaratory action. We consider this doctrine good law.

Now, then, although the plaintiffs and the defendant company did not enter into any contract of lease of estate "Aurora," the former have admitted and do admit that said company is at present the successor in interest of The Esperanza Sugar Company, with which the plaintiffs had entered into said contract by deed of March 31, 1906, and said admission is clearly borne out by the institution of the present action against the defendant corporation for default in the payment of rents stipulated in the aforesaid contract and for other reasons connected with the lease.

Besides the legal relations between the plaintiffs and the defendant corporation derived from the contract of lease, the moment the defendant became, with the assent of the plaintiffs, the successor in interest of The Esperanza Sugar Company, which relations are those existing between lessor and lessee, other legal relations have arisen between the plaintiffs and the defendant corporation as such successor in interest, the same resulting from acts executed by The Esperanza

Sugar Company in violation of the conditions of the contract of lease; and the determination of these legal relations, with respect to which the parties plaintiff and defendant are at odds, does not come within the scope of an action of unlawful detainer, but of a declaratory action; for while the plaintiffs maintain that the defendant corporation is responsible for the acts executed by The Esperanza Sugar Company in violation of the conditions of the lease, the defendant company disclaims any such responsibility.

We shall not close without mentioning the fact that several exceptions were taken at the trial by the plaintiffs and appellants which were entered and enumerated separately in the statement of the case and the bill of exceptions. These exceptions are reproduced literally by counsel for the plaintiffs and appellants in his brief before this Supreme Court as errors committed by the court below; but the errors assigned have not been argued either in writing or orally, nor have they been specified as prescribed by the rules of this court, which might involve a presumption of abandonment, thus relieving us from their examination. We have, however, examined said exceptions, and taking into account the terms of the debate as conducted by the plaintiffs and appellants, and the standpoint from which the legal questions raised have been considered, we have reached the conclusion that none of these exceptions is of such weight as to lead us to reverse the judgment appealed from.

For the foregoing reasons the judgment rendered by the District Court of Humacao on April 12, 1911, from which this appeal has been taken, should be affirmed.

*Affirmed.*

Justices MacLeary, del Toro and Aldrey concurred.

Mr. Justice Wolf expressed his conformity with the judgment.